# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                                Case No. 08-CR-161

**ANTHONY FISHER, et. al.,**

        **Defendants.**

## RECOMMENDATION AND ORDER

On June 3, 2008, the Honorable William E. Callahan, Jr. issued a criminal complaint charging Andre Allen ("Allen") and Anthony Fisher ("Fisher") with conspiracy to possess and distribute more than fifty grams of crack cocaine and marijuana, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(A). Allen alone was charged in a second count of distributing five grams of crack cocaine in violation of Title 21, United States Code, Sections 814(a)(1) and (b)(1)(B). The following day, Judge Callahan issued a second criminal complaint charging Leroy Spinks ("Spinks") with aiding and abetting the distribution of fifty grams of crack cocaine and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and Title 18, United States Code, Section 2.

On June 17, 2008, the grand jury returned a four count indictment against Allen, Fisher, and Spinks. Fisher is charged in count one with conspiracy to distribute fifty grams of crack cocaine and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and 846, and count four with using a communication facility to facilitate the distribution of crack cocaine, in violation of Title 21, United States Code, Section 843(b).

On October 15, 2008, Fisher filed various pretrial motions: motion to suppress Title III wire intercepts (Docket No. 36); memorandum in support of motion, (Docket No. 37); motion to sever defendant, (Docket No. 38), motion for a <u>Santiago</u> hearing, (Docket No. 39), motion for disclosure of impeaching information, (Docket No. 40), memorandum in support, (Docket No. 41), conditional motion to suppress evidence recovered pursuant to search warrant, (Docket No. 42), memorandum in support, (Docket No. 43), motion for notice of intent to use "other crimes, wrongs, or acts" evidence, (Docket No. 44) and memorandum in support, (Docket No. 45).

The government has responded to Fisher's motion for a <u>Santiago</u> hearing, (Docket No. 51), motion for notice of intent to use "other crimes, wrongs, or acts" evidence, (Docket No. 53), motion for disclosure of impeaching information, (Docket No. 54), conditional motion to suppress evidence recovered pursuant to search warrant, (Docket No. 52 (improperly docketed as responding to Docket No. 36, but actually responding to Docket No. 42)), and motion to sever defendant, (Docket No. 55). Fisher has not replied.

As for Fisher's motion to suppress Title III wire intercepts, this court issued a scheduling order regarding the resolution of this motion. (Docket No. 47.) The issue to be addressed at a hearing was the government's alleged failure to minimize its interception of the calls. The court's scheduling order established a procedure for identifying representative calls. Accordingly, on October 27, 2008, Fisher submitted a list of the 43 calls he alleged were not properly minimized. (Docket No. 49.) On November 10, 2008, Fisher identified the intercepted calls he intended to rely upon at the evidentiary hearing. (Docket No. 57.) On November 17, 2008, the government submitted it own list of calls it believed were necessary for the court to consider. (Docket No. 60; <u>see also</u> Docket No. 52.) On November 25, 2008, the court conducted an evidentiary hearing regarding Fisher's motion to suppress Title III wire intercepts. A summary of evidence adduced at that hearing is set forth below.

2

**Motion to Suppress Title III Wire Intercepts**

**Evidentiary Hearing Summary**

The court received the testimony of a single witness, Drug Enforcement Administration Special Agent Lou Rossi. Special Agent Rossi ("Rossi") was the day shift supervisor for the relevant wiretap. Another Special Agent supervised the night shift. No monitoring occurred in the early-morning hours between roughly midnight and 8:00 AM. Rossi has been involved in roughly 100 wiretaps. This wiretap involved two phones that investigators identified as being used by Fisher's co-defendant Andre Allen. Prior to the initiation of the wiretap, all agents involved in the investigation as well as the Assistant United States Attorney met to discuss minimization requirements.

Calls were monitored by a computer. When a call came in, it would "pop up" on the computer monitor. The monitoring agent would then listen to the call through the computer speakers or headphones to determine whether or not the call was pertinent to the investigation. If after about two minutes the call was not pertinent to the investigation, the monitoring agent would press the minimization button. A call might be minimized earlier if it was clear that the call was not subject to monitoring, for example, if the subject was talking to a doctor, an attorney, or clergy. The duration of the minimization would appear on the computer screen, and during minimization, the agent could not hear the audio of the call and no audio was recorded. After roughly 30 seconds or so of minimization, the monitoring agent would spot check the call, listen for about two minutes, and if the call was not pertinent, minimize the call again. This process would then be repeated throughout the duration of the call.

Each call is reflected on a call sheet, которой was received as Exhibit 5. On this sheet, information about the call was recorded, such as the participants, whether the call was pertinent to the investigation, whether the call was minimized, the duration of the call and any minimization,

3

and a synopsis of the call. When a call is minimized, there is a beep or a chirp on the tape indicating the beginning of the minimization. On the tape, this first chirp is immediately followed by a second chirp indicating where the monitoring began again. Although there is less than a second between these two chirps on the recording, in actuality, each chirp was separated by the length of the minimization. Special Agent Rossi pointed out these chirps on call number 317, which was played for the court.

Special Agent Rossi testified that monitoring agents often times have a difficult time determining whether or not a call is pertinent to the investigation because targets of a drug investigation very rarely will ever explicitly refer to controlled substances. Rather, it is frequent for subjects to use code words. References to shoes or shirts are common terms. In this case, the subjects used terms such as shirts and glasses, among others, to refer to controlled substances. It is important for monitoring agents to listen to the context of a conversation in an effort to discern whether the subjects are actually talking in code. Discerning the true subject matter of a conversation is particularly difficult early on in monitoring phase of an investigation.

In call number 317, which was recorded on the second day of the monitoring, was monitored for roughly five minutes before being minimized. A person identified as Andre Allen discussed $300, contacts, a note, and a prescription. Special Agent Rossi testified that given that it was known that Andre Allen did not have a job but was nonetheless discussing money, that he was discussing a note and it was known that drug dealers frequently maintain ledgers of drug sales, and it was unclear whether his discussion of contacts was a code word for drugs, it was appropriate for the monitoring agents to continue to listen to the call for roughly five minutes until it became clear that the parties were not discussing matters pertinent to the investigation.

The court also received as evidence Exhibit 6, which is a compact disc of the five calls, including call number 317, that Fisher alleges were improperly minimized.

4

**Analysis**

Fisher contends that the monitoring agents' minimization failures were systemic and pervasive and therefore suppression of all intercepted calls is appropriate. Because it would have been impractical for court to listen to the thousands of intercepted calls, the court instructed Fisher to identify calls he alleges were representative of the agents' failure to minimize. (See Ex. 6.) The court then permitted the government to submit its selection of calls it alleges are representative of the agents' minimization efforts. Rather than submitting its own examples, the government chose to rely upon the calls selected by Fisher and contend that these calls reflect proper minimization efforts that are indicative of the agents' minimization efforts throughout the monitoring.

Minimization is required by 18 U.S.C. § 2518(5), which states in pertinent part:

> Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter. . . .

18 U.S.C. § 2518(5).

> A court assessing the sufficiency of the government's efforts in this regard must ultimately decide whether the steps that agents have taken to minimize the interception of communications unrelated to the investigation were objectively reasonable given the circumstances confronting the agents. See Scott v. United States, 436 U.S. 128, 137 (1978). Although the adequacy of the government's minimization efforts necessarily depends on the facts of each case, relevant considerations include the kind and scope of criminal enterprise that the government was investigating, the thoroughness of the government's efforts to ensure that nonpertinent calls will be minimized, the extent to which the government could have foreseen that certain types of conversations would be innocuous and thus subject to minimization, use of code, and the extent to which the authorizing judge oversaw the interception efforts. United States v. Quintana, 508 F.2d 867, 874-75 (7th Cir. 1975); see also United States v. Charles, 213 F.3d 10, 22 (1st Cir.); United States v. Bankston, 182 F.3d 296, 307 (5th Cir. 1999), judgment rev'd on other grounds by Cleveland v. United States, 531 U.S. 12 (2000); United States v. Williams, 109 F.3d 502, 507 (8th Cir.). "Where an investigation involves a drug ring of unknown proportion, as in this case, 'the need to allow latitude to eavesdroppers is close to its zenith.'" Charles, 213 F.3d at 22, quoting United States v. Hoffman, 832 F.2d 1299, 1308 (1st Cir. 1987).

United States v. Mansoori, 304 F.3d 635, 647 (7th Cir. 2002).

5

"[Not] every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.'" United States v. Fudge, 325 F.3d 910, 917-18 (7th Cir. 2003) (quoting United States v. Chavez, 416 U.S. 562, 574-75 (1974)). "Scott v. United States, 436 U.S. 128 (1978), established that in evaluating whether the government had properly minimized interceptions, the courts should proceed in a realistic, commonsense fashion . . . ." United States v. Dumes, 313 F.3d 372, 380 (7th Cir. 2002).

> Narcotics traffickers are often aware that their conversations might be overheard or intercepted, and so may choose their words carefully. . . . Consequently, the individuals monitoring such conversations cannot be expected to make snap judgments as to whether the subject of the conversation is within the scope of the intercept order. See Quintana, 508 F.2d at 874 ("It is all well and good to say, after the fact, that certain conversations were irrelevant and [monitoring] should have been terminated. However, the monitoring agents are not gifted with prescience and cannot be expected to know in advance what direction the conversation will take.") (internal quotation marks and citations omitted). A number of other courts have found that two to three minutes is a reasonable period of time within which to make an initial judgment as to the pertinence of a conversation. See United States v. Ozar, 50 F.3d 1440, 1448 (8th Cir. 1995); United States v. Homick, 964 F.2d 899, 903 (9th Cir. 1992); United States v. Willis, 890 F.2d 1099, 1102 (10th Cir. 1989); United States v. Losing, 560 F.2d 906, 909 n.1 (8th Cir. 1977); United States v. Armocida, 515 F.2d 29, 45 (3d Cir. 1975); see also Bynum v. United States, 423 U.S. 952, 954 (1975) (Brennan, J., dissenting from denial of certiorari) (noting that brief calls - apparently those of less than three minutes in duration - will generally not be subject to minimization).

Mansoori, 304 F.3d at 647-48.

As noted above, "[t]he Seventh Circuit has held that two to three minutes is a reasonable interval within which agents monitoring an interception may make an initial judgment as to the pertinence of a conversation." United States v. Parker, 2006 U.S. Dist. LEXIS 77762, 19 (N.D. Ill. 2006) (citing Mansoori, 304 F.3d at 647); see also United States v. Lamantia, 1996 U.S. Dist. LEXIS 14344, 38-39 (N.D. Ill. 1996) (citing cases).

According to the government, there were 3,485 calls intercepted. (Docket No. 80 at 3.) 462 of these calls were longer than two minutes and therefore subject to minimization. (Docket No. 80

6

at 3.) A total of 222 calls were minimized. (Docket No. 80 at 3.) The government acknowledges that there were seven non-pertinent calls in excess of two minutes involving Fisher that were not minimized, and therefore it agrees to not use calls numbered 1879, 1976, 2545, 3021, 3278 and 3576 against Fisher at trial. (Docket No. 80 at 4.)

The court has reviewed the calls submitted on Exhibit 6 that Fisher contends are indicative of the agents' systemic failures to properly minimize intercepted calls. Very little of the content of these calls could be regarded as being even potentially relevant to the agents' investigation. The calls are fairly mundane social calls where topics such as basketball or personal health matters are frequently discussed. (Although the court acknowledges that in this investigation it was revealed that the parties used the term "basketball" as a code for a quantity of cocaine, (see Docket No. 52-2 at 14), based upon the context of these calls, it is clear the parties are talking about the sport and not anything else.) However, every single one of these clearly non-pertinent calls was frequently minimized by the monitoring agents. Calls were monitored for two to three minutes, minimized, monitored again for up to a couple minutes, and then minimized again. The procedure described by Special Agent Lou Rossi during the evidentiary hearing was clearly followed. The court finds this approach to be in accordance with the monitoring agents' minimization obligation.

However, a single call, number 317, does raise some mild concerns for this court. Rossi discussed this call during the hearing. It was not until 5 minutes and 20 seconds into the call when it was first minimized. In the preceding five minutes, Allen and a female discussed Allen being sick, what Allen did last night, Brett Favre's retirement, and Allen spent a couple minutes trying, unsuccessfully, to encourage the female to share a private fantasy with him. Once it was clear that the female was not going to share her fantasy, the call was frequently minimized.

Rossi testified that monitoring was appropriate because Allen discussed spending approximately $300 on a night out and it was known that Allen did not have a job, and because

7

Allen discussed needing contacts and it was unknown if "contacts" might have actually been code for drugs. Granted, the call was at the beginning of the investigation and thus the agents were uncertain of the scope of the suspected conspiracy, but the court finds it difficult to conclude that a reasonable investigating agent could suspect that information pertinent to the investigation would be likely to be disclosed once the conversation turned towards Allen's efforts to encourage the female to share her private fantasy. In hindsight, the call probably should have been minimized at this point, if not earlier. Notwithstanding, the court is unable to conclude that this specific failure to minimize is indicative of any systemic failure to minimize. As the court previously noted, the four remaining calls that Fisher alleges are indicative of the agents' minimization failures, do not present cause for concern to this court. Therefore, the court finds no systemic failure to minimize intercepted calls and therefore shall recommend that Fisher's motion to suppress be denied.

Fisher also contends that suppression is appropriate because the government has failed to demonstrate it was necessary to monitor Andre Allen's phone calls and instead the government should have monitored the calls of co-defendant Leroy Spinks ("Spinks"). The government's stated purpose in intercepting Allen's calls was to "identify the sources of supply of the cocaine and…determine the full scope of the conspiracy, the roles the individuals played within the conspiracy and the location of the money." (Docket No. 76 at 4 (quoting Gov't Resp., Docket No. 60 at 20).) Fisher contends that these goals could have been accomplished more easily by monitoring the calls of Spinks, who the government suspected of being a higher level distributor, rather than the calls of Allen, who the government suspected to being a mid-level distributor.

The government does not disagree that its goals might have been accomplished more easily if it was able to monitor the organization's leader rather than middleman, but the government responds that it did not have sufficient probable cause to monitor Spinks' phone in March of 2008

and by the time of the second affidavit, Spinks was no longer a supplier to the organization. Therefore, its only reasonable option was to monitor Allen's phone.

"The need for the wiretap is a judgment [left] largely to the principled discretion of the district court." United States v. Thompson, 944 F.2d 1331, 1340 (7th Cir. 1991) (citing United States v. Zambrana, 841 F.2d 1320, 1329 (7th Cir. 1988)). The government need not exhaust all possible avenues of investigation prior to seeking a wiretap. Rather, § 2518(c) merely seeks to ensure that wiretaps are not used "as the initial step in criminal investigation. Id. (quoting United States v. Giordano, 416 U.S. 505, 515 (1974)).

In light of the government's response to Fisher's contention that it should have monitored the phone of Spinks instead of Allen, the court is unable to conclude that Judge Clevert abused his discretion in concluding that other investigative procedures had failed, would be unlikely to succeed, or would be too dangerous to try. Therefore, the court shall recommend that Fisher's motion to suppress intercepted communication on the basis that interception was not necessary, be denied.

**Motion to Sever Defendant**

Federal Rule of Criminal Procedure 8(b) permits the government to charge two or more defendants in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Rule 14 permits a court to sever joined defendants and order separate trials if "a consolidation for trial appears to prejudice a defendant." Fisher does not allege that he was improperly joined pursuant to Rule 8(b) but rather he seeks relief from prejudicial joinder pursuant to Rule 14.

> [A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some

9

circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here.

Zafiro v. United States, 506 U.S. 534, 539 (1993) (internal citations omitted).

A defendant is not entitled to severance simply because he may have a better chance of acquittal if she had a separate trial. Id. at 540. "Rather, [a defendant] 'must establish that he suffered actual prejudice' . . . by establishing that absent the granting of the severance motion, he was unable to obtain a fair trial." United States v. Stokes, 211 F.3d 1039, 1042 (7th Cir. 2000) (citations omitted). The risk of prejudice that may result from "evidentiary spillover" is ordinarily slight. United States v. Abdelhaq, 246 F.3d 990, 992 (7th Cir. 2001). Generally, any risk of prejudice will be eliminated by appropriate limiting jury instructions. Zafiro, 506 U.S. at 539, 541. "Moreover, courts also have a strong interest in favor of joinder of offenses; in particular, joinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal judicial system and reduces the burdens on witnesses from testifying at multiple trials." Stokes, 211 F.3d at 1042. The Seventh Circuit "has long recognized a presumption in favor of conducting a joint trial for persons who have been jointly indicted, especially in situations such as this where the indictment charges a conspiracy." United States v. Caliendo, 910 F.2d 429, 437 (7th Cir. 1990) (citing cases).

Fisher contends that severance is necessary because there is a disparity in the evidence between him and his two co-defendants, his co-defendants could not provide any inculpatory testimony against him but rather may, in fact, provide exculpatory testimony, and his right to confrontation would be violated by the introduction of co-defendant statements.

"[A] simple 'disparity in the evidence' will not suffice to support a motion for severance -- i.e., it does not independently establish 'actual prejudice'." As for any potential problem that may arise as a result of the introduction of a co-defendant's confession that implicates that non-confessing co-defendant, see Bruton v. United States, 391 U.S. 123 (1968), the government responds that at this point it is unclear whether any of the co-defendants may choose to proceed to trial. Should the government seek to introduce the confession of a co-defendant, the government shall redact references to Fisher in accordance with the procedure authorized in United States v. Brooks, 125 F.3d 484, 501-02 (7th Cir. 1997). Finally, as for Fisher's claim that severance is necessary so that he may utilize the testimony of his co-defendants, Fisher presents no details of what information his co-defendants may provide or that any co-defendant would waive his Fifth Amendment privilege and testify. Therefore, it is the conclusion of this court that Fisher has failed to demonstrate any actual prejudice as a result of the joinder and accordingly, the court shall deny his motion for severance.

**Motion for a Santiago Hearing**

Pursuant to Federal Rule of Evidence 801(d)(2)(E), "a statement by a conspirator of a party during the course and in the furtherance of the conspiracy," is not hearsay.

> It is a condition for the admission of such statements, however, that the Government provide sufficient evidence to convince the court, as a preliminary matter (see Fed. R. Evid. 104(a)), that it is more likely than not that 1) a conspiracy existed, 2) the defendant and the declarant were members thereof, and 3) the proffered statement(s) were made during the course of and in furtherance of the conspiracy."

United States v. Cox, 923 F.2d 519, 526 (7th Cir. 1991) (citing United States v. Santiago, 582 F.2d 1128, 1134-35 (7th Cir. 1978).

The Seventh Circuit has approved various procedures that a trial court may employ in order to make the preliminary determination required by Santiago:

11

> [1] the evidence as to these elements can be submitted to the court by way of proffer before trial, and the court can admit the statement(s) subject to its later determination that, based on all of the evidence admitted at trial, the Government has proved by a preponderance of that evidence all three requisite foundational elements. . . . [2] the court can rule on each statement as it is elicited based on the evidence the Government has adduced to that point; [3] the court can, even in the absence of a pretrial proffer, conditionally admit the body of coconspirator's statements subject to the Government's eventual proof of the foundational elements (the penalty for not so proving being a possible mistrial); [4] or the court can hold a "full blown" preliminary hearing to consider all evidence concerning the statements.

Cox, 923 F.2d at 526. The Seventh Circuit discourages the use of "full blown" hearing as a means to make this determination as "inefficient and potentially duplicative." Id.

But it is precisely this full blown pretrial hearing that Fisher in this case seeks, purportedly to avoid "the tremendous waste of time which would be involved in making such determinations during trial." (Docket No. 39 at 3.) Alternatively, the defendant seeks an order requiring the "government to present an offer of proof on the foundational issues that it will offer at trial to which the defendant then would have an opportunity to respond prior to trial and admission of the contested evidence." (Docket No. 39 at 3.)

In this district, it is the well-established general practice to conditionally admit statements of alleged co-conspirators subject to the government showing that they are admissible in accordance with the Santiago considerations. See, e.g., United States v. Davis, 2007 U.S. Dist. LEXIS 86742 (E.D. Wis. 2007); United States v. Martinez, 2007 U.S. Dist. LEXIS 32930 (E.D. Wis. 2007); United States v. Arberry, 2007 U.S. Dist. LEXIS 23286 (E.D. Wis. 2007); United States v. Barrera, 2006 U.S. Dist. LEXIS 80433 (E.D. Wis. 2006); United States v. Arnett, 2005 U.S. Dist. LEXIS 46360 (E.D. Wis. 2005). Accordingly, the defendant's motion shall be denied.

**Motion for Disclosure of Impeaching Information**

Fisher submits a motion seeking discovery of a broad range of potentially impeaching information pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and the progeny thereof.

The government responded acknowledging its obligations under Brady and indicated its willingness to turn over much of the information sought by the defendant. However, the government continues and states that it will not turn over all information sought by the defendant on the basis that many of the defendant's requests are overly broad.

This court does not look favorably upon over-broad boilerplate-type motions that have absolutely no support in the facts of the present case. Such motions are a needless waste of time and do nothing to advance the interests of a client, while requiring the expenditure of limited judicial resources to resolve. Brady, and the progeny thereof, require disclosure of only exculpatory evidence. United States v. Higgins, 75 F.3d 332, 335 (7th Cir. 1996). Even disclosure mid-trial may be sufficient. Id. Brady does not entitle the defendant to catch-all pretrial discovery of anything. Id.

To the extent that Fisher is seeking information pursuant to Brady, the government has acknowledged its obligation to disclose such information, and thus Fisher's motion is moot. To the extent that Fisher is seeking to refashion a discovery request under the guise of Brady, Fisher's motion is denied for Fisher's failure to comply with Criminal L.R. 16.1(a).

**Conditional Motion to Suppress Evidence Recovered Pursuant to Search Warrant**

Fisher seeks to suppress any evidence seized from Fisher's residence as a result of a search warrant issued on June 3, 2008 on the basis that the affidavit submitted in support of the search warrant failed to establish probable cause to search the residence. (Docket Nos. 42, 43.)However, Fisher's attorney "has not been able to identify what incriminating proof, if any, the government seized from this defendant's residence." (Docket No. 42.) Therefore, Fisher captioned his motion as "Conditional."

The government responded, contending that the affidavit sufficiently establishes probable cause to search Fisher's residence or in the alternative, suppression is not appropriate in light of the

good faith exception. (See Docket No. 52, incorrectly docketed as a response to Docket No. 36 rather than 42.)

Fisher has not replied and therefore it is unclear whether he intends to proceed with his motion, or if after having reviewed the government's response wherein it outlines the evidence seized from Fisher's residence, he finds no basis to proceed. In any event, this court must proceed to analyze Fisher's motion in order to provide a complete recommendation to Judge Adelman.

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." United States v. Peck, 317 F.3d 754, 755-756 (7th Cir. 2003) (citing United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)). Probable cause is a fluid concept, United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990), determined by the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). An affidavit has made a proper showing of probable cause when it sets forth facts "sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime." McNeese, 901 F.2d at 592; Gates, 462 U.S. at 238 (probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place); United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir.1995). "Probable cause requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 244 n.13.

The probable cause determination of the judicial officer who issued a warrant shall be afforded great deference. Gates, 462 U.S. at 236. This court does not conduct a de novo review of the state court commissioner's probable cause determination. See id. Rather, this court shall upset a probable cause determination only if there was not a "substantial basis" for the issuing court to believe that a search would uncover evidence of wrongdoing. Id. There is a substantial basis for the issuing of a warrant when the affidavit, "read as a whole in a realistic and common sense

14
Case 2:08-cr-00161-LA   Filed 01/12/09   Page 14 of 18   Document 84

manner . . . allege[s] specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." United States v. Newsom, 402 F.3d 780, 782 (7th Cir. 2005) (quoting United States v. Spry, 190 F.3d 829, 835 (7th Cir. 1999)).

The affidavit contains information from a confidential source who stated that Fisher, Allen, and others assist Spinks in the distribution of cocaine and marijuana. (Docket No. 52-2 at 11.) Subsequent interception of Allen's calls confirmed the confidential source's information that Fisher is a drug associate of Allen, (Docket No. 52-2 at 14), and subsequent investigation indicated that Fisher was a frequent supplier of crack cocaine. (Docket No. 52-2 at 16). In a particular call occurring less than a month before the search warrant was issued, Fisher discusses a quantity of cocaine with Allen who responds that the cocaine is at Fisher's residence. (Docket No. 52-2 at 16-17.) In another call later that same day, Fisher discusses with Allen how his girlfriend is going to get upset if she learns that there is cocaine in his residence. (Docket No. 52-2 at 17.)

The affiant states that he believes that 4231 N. Green Bay Road in Caledonia, Wisconsin, is Fisher's residence because agents conducting surveillance observed Fisher at this location numerous times, sometimes with Allen. (Docket No. 52-2 at 21.) Also, Fisher and Allen referred to this as his residence during intercepted telephone calls, Fisher reported this address as his residence to his probation officer, and the utilities were registered in the name of a person known to be Fisher's girlfriend. (Docket No. 52-2 21-22.)

Based upon this information, the court has no hesitation concluding that there was probable cause to believe that contraband or evidence would be found in the target residence. Fisher explicitly discusses having drugs in his residence and the affidavit contains ample facts to support the conclusion that the target address was probably Fisher's residence.

However, even if the affidavit failed to establish probable cause, the evidence seized need not be suppressed because the police officers who obtained and executed the warrant could have reasonably believed that they had obtained a valid warrant. See United States v. Leon, 468 U.S. 897 (1984).

Even if this court were to agree with the defendant that the affidavit did not establish probable cause, suppression would be appropriate only if the affidavit was so lacking in probable cause that no reasonable police officer could have believed that the warrant was valid. Id. at 922.

If a police officer could have reasonably relied upon the search warrant, then evidence seized pursuant to the warrant shall not be suppressed simply because the search warrant was later determined to be defective. Id. "If a defendant is successful in establishing the invalidity of the search warrant, the burden then shifts to the Government to establish that the police relied in good faith on the judge's decision to accept the affidavit and issue the warrant." United States v. Koerth, 312 F.3d 862, 868 (7th Cir. 2002). A police officer's decision to seek a warrant is prima facie evidence of good faith. United States v. Harju, 466 F.3d 602, 607 (7th Cir. 2006); United States v. Merritt, 361 F.3d 1005, 1013 (7th Cir. 2004); Koerth, 312 F.3d at 868. Thus, the burden falls upon the defendant to rebut this prima facie case. Harju, 466 F.3d at 607.

Because the test is an objective one, it is not necessary that this court conduct an evidentiary hearing to determine whether the particular officers involved in the execution in the warrant at issue in this case did, in fact, rely upon it. The question is whether a reasonable and well-trained police officer would have believed that this warrant was valid. See Leon, 468 U.S. at 922 n.3; see also, United States v. Dickerson, 975 F.2d 1245, 1250 (7th Cir. 1992).

Police officers are not expected to be trained as lawyers and are not required review search warrants with the scrutiny demanded from a judicial officer. "Judicial officers have the responsibility to determine whether there is probable cause to issue a warrant; police officers should

16

not be expected to question that determination." Harju, 466 F.3d at 606; see also, Illinois v. Krull, 480 U.S. 340, 349 (1987) ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."); Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."). However, "[p]olice officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles," United States v. Koerth, 312 F.3d 862, 869 (7th Cir. 2002) (quoting United States v. Brown, 832 F.2d 991, 995 (7th Cir. 1989)), and therefore cannot blindly rely upon a search warrant simply because it bears the signature of a judge.

As explained above, this court believes that the warrant was supported by probable cause. In light of the fact that the issuing state court judge believed that the warrant was supported by probable cause, it is the view of this court that it would not have been unreasonable for the police officers involved in this case to believe that they were acting pursuant to a valid warrant.

**Motion for Notice of Intent to Use "Other Crimes, Wrongs, or Acts" Evidence**

Contrary to Fisher's contention, Federal Rule of Evidence 404(b) *does* contain a notice requirement. In relevant part, Rule 404(b) states, "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

Pursuant to Rule 404(b), a formal motion for notice is not required but rather a defendant must simply request notice. The defendant's motion shall serve as the required notice and therefore no further action of this court is required. If the government shall seek to admit evidence of other

crimes, wrongs, or acts, it shall be in accordance with Rule 404 and related Federal Rules of Evidence. Therefore, Fisher's motion shall be denied as moot.

**IT IS THEREFORE RECOMMENDED** that Fisher's motion to suppress Title III wire intercepts (Docket No. 36), be **denied**.

**IT IS THEREFORE ORDERED** that Fisher's motion to sever defendant, (Docket No. 38), is **denied**.

**IT IS THEREFORE ORDERED** that Fisher's motion for a <u>Santiago</u> hearing, (Docket No. 39), is **denied**.

**IT IS THEREFORE ORDERED** that Fisher's motion for disclosure of impeaching information, (Docket No. 40), is **denied**.

**IT IS THEREFORE ORDERED** that Fisher's conditional motion to suppress evidence recovered pursuant to search warrant, (Docket No. 42), be **denied**.

**IT IS THEREFORE ORDERED** that Fisher's motion for notice of intent to use "other crimes, wrongs, or acts" evidence, (Docket No. 44), is **denied as moot**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation and order herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this <u>12th</u> day of January, 2009.

s/AARON E. GOODSTEIN<br>U.S. Magistrate Judge