# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                                           **Case No. 08-CR-161**

**ANTHONY FISHER**
       **Defendant.**

## DECISION AND ORDER

Defendant Anthony Fisher, charged with conspiracy to distribute controlled substances and use of a communication facility to facilitate drug distribution, moved to suppress evidence gathered pursuant to a Title III intercept, arguing that government agents failed to "minimize" as required by 18 U.S.C. § 2518(5). The magistrate judge handling pre-trial matters in this case held a hearing on the motion, then issued a recommendation that it be denied. Defendant objects, requiring me to review the matter de novo. Fed. R. Crim. P. 59(b)(3).[1]

Under § 2518(5), agents must execute a Title III order "in such a way as to minimize the interception of communications not otherwise subject to interception." The Title III order in this case contains a minimization provision, which required the agents to minimize interception of communications not relevant to the investigation, spot checking to insure that the conversation had not turned to criminal matters; the assigned AUSA provided minimization instructions to the monitors; and at the hearing DEA Special Agent Lou Rossi testified that agents minimized calls after determining that they were non-pertinent or not otherwise subject to monitoring,

---

[1] Defendant filed various other, non-dispositive motions, which the magistrate judge denied. Defendant does not seek review of those orders. Nor does he seek review of the magistrate judge's determination on the necessity of the wiretap.

periodically spot checking for pertinence. In his objections, defendant nevertheless argues that the procedure utilized – monitoring every call, from start to finish, subject only to spot checking – violated the statute, the order and the AUSA's instructions.

A court assessing the sufficiency of the government's minimization efforts must decide whether the steps that agents took to minimize the interception of communications unrelated to the investigation were objectively reasonable under the circumstances. United States v. Mansoori, 304 F.3d 635, 647 (7th Cir. 2002). Relevant considerations include the nature of the criminal enterprise under investigation, the thoroughness of the government's efforts to ensure that non-pertinent calls will be minimized, and the use of code. Id. Where the investigation involves a drug ring of unknown proportions, the need to allow latitude to the agents is close to its zenith. Id. Courts have generally held that a period of two to three minutes is a reasonable period of time within which to make an initial judgment as to the pertinence of a conversation, and that periodic spot-checking of minimized conversations to determine whether they have turned to drug-related matters is also reasonable. Id. at 647-48 (collecting cases); see also United States v. Dumes, 313 F.3d 372, 380 (7th Cir. 2002) (citing United States v. Malekzadeh, 855 F.2d 1492 (11th Cir. 1988); United States v. Apodaca, 820 F.2d 348 (10th Cir. 1987)); United States v. Lamantia, No. 93 CR 523, 1996 WL 559950, at *13 (N.D. Ill. Sept. 30, 1996) ("Courts have generally concluded that calls less than two or three minutes in duration are too short to minimize.").

The reviewing court should proceed in a realistic, commonsense fashion and not blindly rely on the percentage of non-pertinent calls intercepted. Dumes, 313 F.3d at 380 (citing Scott v. United States, 436 U.S. 128, 140 (1978)). In other words, the adequacy of the government's minimization efforts typically cannot be determined in a generalized fashion. Mansoori, 304

2

F.3d at 648 (citing Scott, 436 U.S. at 140-41). In Mansoori, the Seventh Circuit held that a defendant challenging the government's minimization should provide a sampling of the intercepted calls demonstrating that the agents performed spot checks at intervals that were too frequent, or that they listened for too long when they made those checks. Id. The court further stated that the appropriate relief for a minimization failure is generally to suppress any conversation inappropriately monitored; wholesale suppression of all intercepted conversations is reserved for the "particularly horrendous case." Id.; see also United States v. Mullen, 451 F. Supp. 2d 509, 538 (W.D.N.Y. 2006) (stating that "suppression of all communications intercepted pursuant to any of the challenged Intercept Orders is not the proper remedy absent a 'pervasive disregard of the minimization requirement'") (quoting United States v. Cirillo, 499 F.2d 872, 881 n. 7 (2d Cir. 1974)); United States v. Dorfman, 542 F. Supp. 345, 391 (N.D. Ill. 1982) ("It is not enough for the defendants to identify particular calls which they contend should not have been intercepted; they must establish a pattern of interception of innocent conversations which developed over the period of the wiretap.").

Before the magistrate judge, defendant presented a list of calls he believed indicative of a failure to minimize. The magistrate judge analyzed those calls and concluded that all but one had been properly minimized and spot checked. He doubted that the agents properly minimized one of the calls, but found that this specific failure to minimize was not indicative of any systemic failure to minimize. Defendant does not in his objections contest this determination. The wholesale suppression defendant seeks is reserved for the "particularly horrendous case," and as the magistrate judge properly found, this is not such a case.

In his objections, defendant makes the sort of generalized challenge the Seventh Circuit rejected in Mansoori. Like the Mansoori court, I cannot find the government's overall approach

3

insufficient. As Special Agent Rossi testified, this case involved the investigation of a drug trafficking organization of unknown scope whose members used code words. Thus, agents could not be expected to make snap judgments as to whether a call was pertinent, particularly early on in the investigation.[2] A caller referring to "shirts" might mean the article of clothing, or he might mean drugs; the agents needed to listen on to determine the context. It was therefore reasonable for agents to listen for roughly two minutes, minimize for a period of time, then spot check and listen for another two minutes.[3]

Defendant cites no authority for the proposition that once agents determined a call was non-pertinent they were required to terminate all monitoring, and I have found none. See, e.g., United States v. Losing, 539 F.2d 1174, 1180 (8th Cir. 1976) (stating that "interception of innocent conversations need not be totally eliminated, and spot-checking of innocent conversations is permissible"); United States v. Sorapuru, 902 F. Supp. 1322, 1330 (D. Colo.1995) ("Intermittent spot-checking of minimized calls is a reasonable permissible technique to monitor calls that may at the outset appear to involve purely personal matters but later turn out to be drug related."), aff'd, 120 F.3d 271 (10th Cir. 1997); United States v. Costello, 610 F. Supp. 1450, 1477 (N.D. Ill. 1985) ("Section 2518(5) permits the government to 'spot check' even innocent conversations to determine whether the subject of the conversation has shifted."), aff'd, 830 F.2d 195 (7th Cir. 1987). Indeed, the order in this case

---

[2] The particular call the magistrate judge found troublesome occurred on the second day of monitoring.

[3] Special Agent Rossi testified that during the period of minimization agents could not hear the audio and the call was not recorded. (Evid. Hr'g Tr. at 37-38.) Thus, although calls may have been subject to monitoring from "beginning to end" as defendant claims, the record is clear that during the period of minimization no eavesdropping occurred.

4

required agents to spot check to insure that the conversation had not turned to criminal matters. See Mansoori, 304 F.3d at 645-46 (upholding nearly identical spot check provision).

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is adopted, and defendant's motion to suppress is **DENIED**.[4]

Dated at Milwaukee, Wisconsin, this 20th day of March, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[4] Some courts follow a two-step procedure for deciding motions to suppress based on failure to minimize. Under this procedure, the government must first make a prima facie showing of compliance with § 2518(5). Once a prima facie showing is made, the burden shifts to the defendant to show that, despite good faith compliance with the minimization requirements, substantial unreasonable interception of non-pertinent conversations occurred, warranting suppression of the evidence. See, e.g., United States v. Funderburk, 492 F. Supp. 2d 223, 245-46 (W.D.N.Y. 2007). In the present case, the government through Special Agent Rossi's testimony and the exhibits admitted at the hearing made a prima facie showing that the monitors attempted in good faith to minimize as required by statute and the order. As discussed in the text, defendant failed to meet his burden of identifying specific calls showing that a substantial number of non-pertinent conversations were intercepted.

5